IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE EX PARTE APPLICATION OF | ) | |
| CATERPILLAR INC. for an Order | ) | No. 3:19-mc-0031 |
| Pursuant to 28 U.S.C. § 1728 to Conduct | ) | Campbell/Holmes |
| Discovery for Use in Foreign Proceedings | ) | |

## **MEMORANDUM OPINION AND ORDER**

For the reasons discussed in more detail below, Respondents' joint motion to quash (Docket Entry No. ("DE") 23) is DENIED, Wirtgen's motion to strike (DE 35) is DENIED, and Respondents' joint motion to strike (DE 40) is DENIED. Respondents shall, within thirty (30) days of the date of entry of the Memorandum Opinion and Order produce the documents requested in the issued subpoenas (*see* DE 15-1, DE 15-2), except as to the German Allegations (as that term is defined in the subpoenas) and subject to any objections lodged in accordance with applicable Federal Rules of Civil Procedure and the Court's Local Rules, which shall be resolved in accordance with the discovery dispute resolution procedures detailed below.

On October 31, 2019, Plaintiff Caterpillar Inc. ("Caterpillar") filed an *ex parte* application with this Court seeking leave pursuant to 28 U.S.C. § 1782 to serve subpoenas on Respondents Deere & Company ("Deere") and Wirtgen America, Inc. ("Wirtgen America") (collectively referred to as "Respondents"). (DE 1.) The application was referred to the Magistrate Judge for resolution. (DE 13.) On November 13, 2019, the Court conditionally granted this application in an order that required Respondents to show cause as to why they should not comply with these subpoenas by November 25, 2019. (DE 14.)[1]

---

[1] The Court granted the parties' subsequent stipulation to an extension of this deadline to December 9, 2019. (DE 19,)

Now pending is Respondents' joint motion to quash the subpoenas (DE 23), as well as their separate briefs in response to the Court's show cause order. (DE 27, 28.)[2] Caterpillar has filed a response to the motion to quash (DE 29), and Respondents have filed a subsequent reply. (DE 33.) The parties' briefs are supported by various declarations and exhibits. (DE 25; DE 26; DE 29-1; DE 29-2; DE 33-1.) Other relevant filings include Wirtgen's motion to strike (*see* DE 35), to which Caterpillar has filed a response (DE 36), and Respondents' joint motion to strike (DE 40), to which Caterpillar has filed a response. (DE 41.)

In light of the extensive briefing by the parties and the absence of any request for an evidentiary hearing, the Court finds it unnecessary to conduct such a hearing to resolve the instant dispute.[3]

For the reasons that follow, the joint motion to quash (DE 23) is DENIED,[4] Wirtgen's motion to strike (DE 35) is DENIED, and Respondents' joint motion to strike (DE 40) is DENIED.[5]

---

[2] Caterpillar argues that Respondents' motion to quash fails to adhere to the Court's November 13, 2019 order requiring Respondents to "show cause in writing why it should not comply" with the subpoenas at issue (DE 14 at 2), and claims that such action represents an improper attempt to "prolong briefing." (DE 29 at 7.) While the Court certainly appreciates this attentiveness to its orders, the motion to quash is both substantively responsive to the Court's show cause order and compliant with its subsequent order, entered on December 2, 2019, which granted Respondents additional time to "file and serve *any motion* or response to the Court's order of November 13, 2019[.]" (DE 19 at 1) (emphasis added). It is also not disputed that a motion to quash is an appropriate mechanism for challenging a section 1782 application. *See In re Letter of Request from Supreme Court* 138 F.R.D. 27, 32 n.6 (S.D.N.Y.1991) ("[S]uch *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it"). The Court will therefore evaluate the motion to quash on its merits.

[3] *See Victoria, LLC v. Likhtenfeld*, 791 F. App'x 810, 819 (11th Cir. 2019) (noting the absence of "any binding law requiring evidentiary hearings in § 1782 proceedings").

[4] See n. 11 below.

2

# I. BACKGROUND

## A.     Parties and Factual Background

Caterpillar, a manufacturer of construction equipment headquartered in Illinois, seeks to take discovery in this district from Deere, a manufacturer of various types of equipment with a principal place of business in Illinois, and Wirtgen America, a Tennessee corporation that recently became a subsidiary of Deere, for use in ongoing and contemplated proceedings in various foreign courts pursuant to 28 U.S.C. § 1782. Also relevant to this matter is Wirtgen GmbH, a German company that is an affiliate of Wirtgen America and a party to the pending European proceedings discussed below.

Wirtgen GmbH owns the rights to seven European patents at issue in both the current matter and the European proceedings described below: (i) European patent ("EP") 1294991 ("Auxiliary Drive"); (ii) EP 1875004 ("Vibration Mounting"); (iii) EP 1924746 ("Path Measurement"); (iv) European patent no. 2025812 ("Scraper Blade"); (v) EP 1855899 ("Four Way Full Floating"); (vi) EP 2010714 ("Level Pro/Sensor Switching"); and (vii) EP 1860241 ("Driving Backwards"). Wirtgen GmbH filed foreign counterpart applications for each of these patents in the United States, among other places. Wirtgen GmbH ultimately assigned its rights to these U.S. patents to Wirtgen America. Deere acquired the Wirtgen Group Holding GmbH ("Wirtgen Group") in December of 2017.

---

[5] Caterpillar also filed a request to take judicial notice of certain provisions of European law and various filings in related European proceedings (DE 7), to which no objections have been filed. This request is GRANTED. *See Lyons v. Stovall*, 188 F.3d 327, 333, n.3 (6th Cir. 1999) ("[I]t is well-settled that [f]ederal courts may take judicial notice of proceedings in other courts of record") (internal citations and quotations omitted).

Respondents assert that Caterpillar's Italian affiliate, Caterpillar Prodotti Stradali S.r.L. ("Caterpillar PS"), manufactures road-milling machines that infringe Wirtgen GmbH's patented technology.

## B. Underlying Foreign Litigation

The foreign litigation for which Caterpillar seeks discovery includes the following European proceedings: (1) Wirtgen GmbH's 2017 patent infringement action against Caterpillar PS in Milan, *Wirtgen GmbH v. Caterpillar Prodotti Stradali S.r.l. and Caterpillar Financial Corporacion Financiera S.A. E.F.C.*, Court of Milan, Specialized Business Division, Dkt. No. 37220/2017 (the "Milan Action"); (2) Wirtgen GmbH's 2017 patent infringement action against Caterpillar PS in Genoa, *Wirtgen GmbH v. Caterpillar Prodotti Stradali S.r.l.*, Court of Genoa, Specialized Business Division, Dkt. No. 9087/2017 (the "Genoa Action"); (3) a 2019 patent invalidity action by multiple Caterpillar affiliates against Wirtgen GmbH in Turin, *Caterpillar Prodotti Stradali S.r.l. & Caterpillar Fin. Corporacion Financiera SA. E.F.C. v. Wirtgen GmbH*, Court of Turin, Specialized Business Division (the "Turin Action") (the three cases in Italy are referred to together as the "Italian Actions"); and (4) an anticipated action by Wirtgen GmbH against Caterpillar for patent infringement in Germany (the "German Matter") (the proceedings in Italy and Germany are collectively referred to as the "European proceedings"). The Court will discuss the posture of these actions to the extent they impact consideration of the instant application.

### 1. The Milan Action

This case involves alleged infringement of four of Wirtgen GmbH's seven European patents—those identified as (i) – (iv) *supra*—based on the road-milling machines manufactured

4

by Caterpillar PS.[6] The Milan court set a deadline of April 23, 2018 for the submission of evidence and briefing on evidentiary issues. During an evidentiary hearing on May 16, 2018, Caterpillar PS moved for additional discovery to be taken, a request to which Wirtgen GmbH objected. On October 25, 2018, the Milan court ordered that the technical phase of the case proceed without the additional discovery requested by Caterpillar PS, but later gave Caterpillar PS a "limited opportunity to submit new evidence" by October 15, 2019. *See* DE 24 at 13.

### 2. The Genoa Action

This case involves alleged infringement of three of Wirtgen GmbH's seven European patents—those identified as (v) – (vii) *supra*—based on the road-milling machines manufactured by Caterpillar PS. The Genoa court held a final hearing on November 19, 2019 during which the parties presented their final arguments. Notably, Caterpillar PS's request for an opportunity to submit additional evidence was denied during this hearing. *Id.* at 19.

### 3. The Turin Action

Caterpillar PS filed this action to challenge the validity of the patents at issue in the Genoa action. Respondents note that this proceeding is in its initial phase and that an initial hearing was held on January 8, 2020.

### 4. The German Matter

There is no pending German litigation at issue. This matter is instead based on a letter drafted by Wayne Beavers, an attorney in Nashville who serves as counsel for both Wirtgen America and Wirtgen GmbH, and sent to Caterpillar officials on March 27, 2019. Respondents explain that Wirtgen America had "anticipated" that Caterpillar would exhibit certain machines incorporating the subject patent technology at the Bauma trade show in Munich, Germany on

---

[6] Respondents note that the Milan and Genoa Actions "together cover all seven patent families underlying Caterpillar's subpoena." (DE 24 at 5.)

April 8, 2019, which Respondents describe as "one of the world's largest trade shows dedicated to construction equipment." (DE 24 at 14.) Wirtgen GmbH and Mr. Beavers therefore preemptively issued this letter to dissuade Caterpillar from exhibiting the allegedly infringing technology at the trade show.

In the letter, Mr. Beavers identifies Wirtgen GmbH as the owner of the seven European patents described *supra*, as well as 10 German patents and 11 U.S. patents corresponding to the technology at issue. (DE 5-1 at 2.) Mr. Beavers notes that the U.S. and European patents are the subject of ongoing litigation in the U.S. and Italy before advising Caterpillar that the subject machines, if sold or advertised in Germany, would infringe on the European patents. (*Id.* at 3.) The letter closes with the following admonition:

> Please be advised that if any of the Caterpillar Parties or related entities offers to sell, or sells, or advertises the Caterpillar products (or any other machine incorporating the invention of one or more of the Patent Families) in Germany, including but not limited to the BAUMA trade show beginning April 8, 2019 in Munich, Germany, Wirtgen GmbH will immediately take legal action based on the German Patents and/or the European patents.

> If you wish to avoid further legal action by Wirtgen GmbH, the Caterpillar parties and related entities should not offer to sell, or sell, or advertise the Caterpillar products (or any other machine incorporating the invention of one or more of the Patent Families) in Germany, including but not limited to the BAUMA trade show beginning April 8, 2019 in Munich, Germany.

(*Id.*) In light of this warning, Caterpillar refrained from selling or advertising any of the subject machinery at the Bauma trade show.

## C.    Related Litigation

The parties identify additional actions in the U.S. that involve the same patent technology at issue in the European proceedings. On June 15, 2017, Wirtgen America filed a complaint against Caterpillar and its affiliates in the District of Minnesota for alleged infringement of its

6

patent technology. On June 16, 2017, Wirtgen America filed a similar claim against Caterpillar and its affiliates in the District of Delaware. These actions remain pending.

On July 19, 2017, Wirtgen America filed a complaint with the United States International Trade Commission ("USITC") in which it again alleged patent infringement against Caterpillar and its affiliates. The USITC entered a final determination in favor of Wirtgen America on July 18, 2019, concluding that the road-milling machines manufactured by Caterpillar PS infringed Wirtgen America's patents (the "USITC Action").

The patent technology at issue has also been the subject of multiple *inter partes* review ("IPR") proceedings before the United States Patent and Trademark Office ("USPTO"). Caterpillar asserts that such proceedings (the "IPR proceedings") resulted in the USPTO invalidating several Wirtgen America patent claims that "overlap substantially" with the claims at issue in the Italian Actions and German Matter. (DE 2 at 17.)[7]

D.     **Caterpillar's Subpoenas**

The subpoenas served on Wirtgen America and Deere are identical and include 30 requests for production of documents. (DE 15-1, DE 15-2.)[8] Requests 1-7 seek "all documents" related to each of the seven European patents at issue, including "any American or

---

[7] Caterpillar identifies the IPR proceedings as: *Caterpillar Inc. v. Wirtgen Am., Inc.*, Final Written Decision in *Inter Partes* Review of U.S. Patent No. 9,624,628 B2, Case IPR2017-02186 (P.T.A.B. May 1, 2019); *Caterpillar Inc. v. Wirtgen Am., Inc.*, Petition for *Inter Partes* Review of U.S. Patent No. 9,624,628 B2, Case IPR2018-00155 (P.T.A.B. May 22, 2019); *Caterpillar Inc. v. Wirtgen Am., Inc.*, Petition for *Inter Partes* Review of U.S. Patent No. 9,644,340 B1, Case IPR2017-02187 (P.T.A.B. May 21, 2019); *Caterpillar Inc. v. Wirtgen Am., Inc.*, Final Written Decision in *Inter Partes* Review of U.S. Patent No. 9,644,340 B1 (P.T.A.B. May 21, 2019); *Caterpillar Inc. v. Wirtgen Am., Inc.*, Final Written Decision in *Inter Partes* Review of U.S. Patent No. 7,828,309 B2, Case IPR2017-02185 (P.T.A.B. July 17, 2019).

[8] For ease of reference, the Court will describe and cite only the requests included in the Wirtgen America subpoena

European prior art, application diligence, advertisements, sales, offers for sale, or other public disclosures of patented technology." (DE 15-1 at 9-10.)

Request 8 seeks documents relating to Deere's purchase of Wirtgen Group. (*Id*. at 10). Relatedly, Request 9 seeks "all documents" from a virtual "data room" in which Wirtgen Group purportedly disclosed to Deere information pertaining to the purchase agreement governing Deere's acquisition of Wirtgen Group. (*Id*.; DE 24 at 15.)

Request 10 seeks "all documents" accessible via Wirtgen Group's WIDOS electronic documentation system relating to the patent technology at issue in the European proceedings. (DE 15-1 at 11.)

Requests 11-17 seek "all documents" relating to several different activities at issue in the European proceedings, including the manufacture, design, development, first sale, disclosure, market release, and practice of one of Wirtgen Group's surface mining machines, the Wirtgen 2500 SM. (*Id*. at 11-13.)

Requests 18-22 seek "all documents" involving prior art related to the subject matter of any of the patents involved in the European proceedings. (*Id*. at 13-14.)

Request 23 seeks "all documents" relating to any allegation that any of the patents at issue is invalid or unenforceable. (*Id*. at 14.)

Request 24 seeks "all documents" that have been designated as prior art by any individual and relate to any of the patents at issue. (*Id*.)

Requests 25 and 26 seek all versions of any manuals relating to the Wirtgen 2500 SM, as well as "all documents" relating to the initial importation of the Wirtgen 2500 SM to the United States. (*Id*.)

Request 27 seeks "all documents" relating to the sale of any Wirtgen Group machine covered by any of the patent technology at issue in the European proceedings that was sold before August 15, 2007. (*Id.*)

Requests 28 and 29 seek "all documents" relating to the sale of a Wirtgen 2500 SM machine before 2002. (*Id.*)

Request 30 seeks "all documents" exchanged between Deere and Wirtgen Group relating to any patent technology at issue in the European proceedings. (*Id.*)

Caterpillar contends that such evidence is in Respondents' possession and will demonstrate that Respondents disclosed the subject technology to the public prior to filing applications for the corresponding patents—an act that would qualify as "prior art"—which would preclude enforcement of the patents at issue under European law.[9]

## II. ANALYSIS

### A. Standard of Review

#### 1. 28 U.S.C § 1782

Federal district courts have the authority to order discovery that will be used in a foreign or international tribunal. *See* 28 U.S.C. § 1782. District courts must consider exercising such authority while bearing the "twin aims" of section 1782 in mind: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004). The statute authorizes discovery for this purpose only if the following elements

---

[9] Italian courts assess the validity of European patents based on European Patent Convention ("EPC") Article 52. *See* DE 7-4.

are met: (1) the target of the discovery must reside or be found in the district where discovery is sought; (2) the discovery sought must be "for use in" a (3) "foreign or international tribunal"; and (4) the application for discovery must be made by either the subject tribunal or by an "interested person." 28 U.S.C. § 1782.[10] The party seeking discovery—in this case, Caterpillar—bears the burden of establishing that each of these statutory elements is met. *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015).

Additionally, if the statutory elements are met, the Supreme Court has articulated four discretionary factors for district courts to weigh: (1) whether the party from whom discovery is sought is a party to the foreign proceeding; (2) whether the foreign court or tribunal has been historically receptive to assistance provided under section 1782; (3) whether the application is an attempt to circumvent foreign proof-gathering restrictions or is a good faith effort to obtain probative evidence; and (4) whether the documents and testimony sought are not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265 (hereinafter referred to as the "*Intel* factors"). As the term suggests, these "discretionary" factors aid the reviewing court in deciding whether the discovery application should be granted once the court's authority is established by satisfaction of the statutory elements. *See financialright GmbH v. Robert Bosch LLC*, 294 F. Supp. 3d 721, 728 (E.D. Mich. 2018) ("[A] § 1782 application presents two inquiries, first, whether the district court is authorized to grant the request; and second, if so, whether the district court should exercise its discretion to do so.") (internal citation omitted). Notably, the Supreme Court did not confer a burden on either party with respect to these discretionary factors, and the Sixth Circuit has apparently not had cause to address the issue. The Court therefore opts to follow the First Circuit's reasoning in applying a neutral approach to the discretionary factors:

---

[10] Some courts combine the second and third elements into a single statutory element.

Because the Supreme Court gave great flexibility and discretion to district courts in weighing the different factors, we believe the Supreme Court did not intend to place a burden on either party. Rather, it intended for both parties to make their arguments as to all of the factors, and for the district court to then determine whom those factors favor. In this sense, we do not see the factors as creating a "burden" for either party to meet, but rather as considerations to guide the district court's decision.

*In re Schlich*, 893 F.3d 40, 50 (1st Cir. 2018).

### 2. Motion to Quash

A court is required to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)." The scope of discovery under a subpoena is the same as the scope of discovery under Rule 26. "The scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."   Fed. R. Civ. P. 45, Advisory Committee Notes (1970); s*ee also Bäumer v. Schmidt*, 423 F.Supp.3d 393 (E.D. Mich. 2019). The party seeking to quash a subpoena bears the burden of proof. *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011).

### B. Motions to Strike

Before turning to the section 1782 analysis, the Court will address the motions to strike. On December 24, 2019, Caterpillar filed a notice of supplemental authority in support of its section 1782 application, which included approximately five pages of discussion of a report entered in the Milan Action by a court-appointed technical expert ("CTE") that purportedly supported enforcement of Caterpillar's subpoenas. (DE 34.) Attached to this notice is the Declaration of Luigi Mansani, an attorney representing Caterpillar PS in the three Italian Actions at issue, which avers that the CTE made findings "favorable to Caterpillar on three of the four patents" at issue in the Milan Action. (DE 34-1 at 2.) Wirtgen America responded by filing a

motion to strike based on its contention that these filings went well beyond a simple "notice" and contained significant argumentation in response to Respondents' reply, effectively constituting a surreply filed without leave of court. (DE 35 at 1-2.)

Caterpillar has filed a response to the motion to strike in which it argues that it merely provided a "brief explanation" of excerpts from the Milan report. (DE 36 at 1.) This characterization, however, greatly understates the extent to which Caterpillar provided argumentation in the filing, which included the following:

> The Milan Report supports immediate enforcement of the Subpoenas for at least three reasons. First, the CTE seeks party comments on the report's preliminary findings by January 15, 2020 to facilitate a final report on January 31 for a hearing currently scheduled for February 12. This timeline alone supports prompt action on the Subpoenas. Second, the Milan Report contains initial findings that the Section 1782 discovery would undeniably inform, particularly regarding any SM 2500 machines Respondent Wirtgen America offered or sold in the United States. Third, the Milan Report confirms uses for the Section 1782 discovery in Italy that directly refute the arguments in Respondents' filings. (Dkts. 23-24, 33.) For all of these reasons as well as those in Caterpillar's briefs (Dkts. 2, 29), the Court should immediately enforce the Subpoenas.

(DE 34 at 1.) This exceeds the parameters of a simple "notice" filing and will therefore be disregarded. Caterpillar is certainly encouraged to keep the Court apprised of any relevant developments in the European proceedings at issue, but such notifications cannot be tantamount to supplemental briefs of law containing additional arguments that grant the filing party an unfair advantage; they must be limited to brief summaries of the relevant documents. Anything more, if it relates to the same motion, amounts to a surreply requiring leave of court. *See* Local Rule 7.01(a).

The same reasoning applies to the second notice of supplemental authority filed by Caterpillar, which pertains to an order entered in the Turin Action. (DE 39; DE 39-1.) Apparently recognizing that it overreached in its previous notice, Caterpillar makes a point to

clarify that this notice contains only a "brief summary[y]" of the order. (DE 39 at 1.) Nevertheless, the Respondents filed a joint motion to strike accusing Caterpillar of again improperly "present[ing] attorney argument" under the guise of supplemental authority. (DE 40 at 1.) The Court agrees and will likewise disregard such argumentation.

However, the Court does not find it necessary to strike Caterpillar's improper filings. District courts "generally look with disfavor on Motions to Strike," *Bell v. Providence Cmty. Corr., Inc.*, No. 3:11-cv-0203, 2011 WL 2218600, at *7 (M.D. Tenn. June 7, 2011), primarily because the specific authority to strike documents is found in Rule 12(f), which permits such action only with respect to a "a pleading [containing] an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although the Court possesses inherent authority to control its own dockets, including to strike matters as appropriate, the Court will nevertheless construe Respondents' motions as requests to disregard the notices of authority filed by Caterpillar in reviewing the motion to quash, which the Court will do. *See Osborne v. Nicholas Fin., Inc.*, No. 3:12-00185, 2014 WL 12774230, at *1 (M.D. Tenn. Dec. 5, 2014) (citing cases in which a court technically denies a motion to strike but nonetheless disregards the filing).

On March 3, 2020, Wirtgen America filed its own notice of supplemental authority (DE 42), which included an English translation of a recent order entered in the Turin Action (DE 42-1), the Declaration of translator Raffaele Sena (DE 42-2), and the third Declaration of Luca Trevisan (DE 42-3). Caterpillar filed a response arguing that Wirtgen America improperly put "spin" on the Turin order (DE 44 at 2) but did not move to strike the filing. The Court need not, therefore, take any specific action as to this notice, but will give it whatever weight is appropriate.

### C. Section 1782 Elements

The Court now turns to the motion to quash. Respondents do not dispute that they "reside" in this district for purposes of Caterpillar's application, nor do they dispute that an "interested party" has proffered this application. Furthermore, Respondents do not dispute that all of the section 1782 statutory elements are met as to the Turin Action.[11] They do, however, challenge Caterpillar's satisfaction of the second statutory element, contending that the discovery sought by Caterpillar cannot be considered "for use in" the Milan Action, the Genoa Action, or the German Matter. Respondents also dispute that the third statutory element has been met with respect to the German Matter given that no legal proceedings were actually commenced in Germany following Mr. Beavers' letter to Caterpillar. The Court will therefore limit its statutory analysis to these disputed elements.

#### 1. "For Use" in the Milan and Genoa Actions

Respondents argue that Caterpillar cannot satisfy the second statutory element under section 1782 with respect to these proceedings because both the Milan and the Genoa courts imposed deadlines for submission of evidence that have passed. (DE 24 at 18-20). According to Respondents, Caterpillar would not be able to submit any evidence stemming from discovery obtained in this district without leave from the Milan and Genoa courts to do so. (*Id.*).

While a section 1782 applicant must demonstrate that the discovery it seeks "will be employed with some advantage or serve some use in the proceeding," *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015), the Court's role in reviewing this intended use is minimal. *See In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) (district courts are not required "to undertake an

---

[11] Respondents' concession that all of the statutory elements are met as to the Turin Action appears to moot any such consideration with respect to the remaining European proceedings. Nevertheless, the Court will proceed with a comprehensive analysis of each of those matters.

analysis of the admissibility of each piece of evidence sought") (internal citation omitted). The applicant is only required to make a *prima facie* showing that the discovery sought has "some relevance" to the foreign proceeding. *Id*. (internal citation omitted).

Bearing this in mind, the Court finds that the second statutory element is met with respect to the Milan and Genoa Actions. Although not articulated as such, Respondents effectively ask the Court to find that the discovery sought by Caterpillar is inadmissible in these cases due to lapsed discovery deadlines. It is not for this Court to consider, however, whether the evidence would be "discoverable" in the foreign tribunal. *See Intel*, 542 U.S. at 253 (holding that section 1782 does not impose a "foreign-discoverability" requirement). *See also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (noting that a district court should not consider the admissibility of evidence in a foreign proceeding in ruling on a section 1782 application since the foreign tribunal "is free to exclude the evidence or place conditions on its admission"); *John Deere Ltd. v. Sperry Corp.,* 754 F.2d 132, 138 (3d Cir.1985) ("Nor can concern for the ultimate admissibility of the discovered material be argued as a limit on section 1782 orders."). Respondents cite no authority holding that a lapsed discovery deadline precludes a finding that the second statutory element has been met.

Significantly, Respondents' own brief indicates that such evidence could very well be admitted in the Milan and Genoa Actions if it meets certain criteria. (DE 24 at 19-20). This further supports granting Caterpillar's application, as the Milan and Genoa courts will have complete authority to accept or reject any evidence stemming from Caterpillar's subpoenas. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) ("[A] foreign tribunal's corrective response to a well-intentioned but unwelcome grant of discovery could bar the evidence gathered in the given case[.]").

Finally, Caterpillar provides an explanation for the ways in which the information it seeks via the section 1782 application could feasibly be used in the Milan and Genoa courts. (DE 29 at 11-12). Specifically, the discovery could impact a final technical report, support Caterpillar's request for additional fact discovery in the Milan case, bolster Caterpillar's motion to reopen the record in the Genoa case, or any combination of these possibilities. (*Id.*) Caterpillar also notes that the section 1782 discovery could impact the ultimate determination of damages in the Genoa case (*id.* at 12), which courts have relied on as a basis for granting a section 1782 application. *See In re Levi Strauss & Co.*, No. 18-MC-80123-JSC, 2018 WL 3872790, at *3 (N.D. Cal. Aug. 15, 2018) (authorizing section 1782 discovery in part based on applicant's assertion that information sought would assist expert with the damages calculation). Caterpillar has therefore made a *prima facie* showing that the discovery it seeks may be used in the Milan and Genoa cases.

Accordingly, the Court finds that the second statutory element has been met as to both the Milan and Genoa Actions.

### 2. The German Matter

Respondents argue that the threat of litigation contained in the Wirtgen letter to Caterpillar does not satisfy the third statutory element requiring that the discovery sought be for use in a "foreign or international tribunal." Respondents note that in response to the Wirtgen letter, Caterpillar refrained from advertising, offering, or selling the machines that allegedly infringed Respondents' patents, and thus contend that no legal proceedings that meet the third statutory requirement were ever commenced. (DE 24 at 17-18.)

The *Intel* decision makes clear that section 1782 does not require that foreign adjudicative proceedings be "pending" or "imminent," but rather that such proceedings be

"within reasonable contemplation." 542 U.S. at 259 (internal citation omitted). While such an amorphous concept is admittedly difficult to apply to a specific fact pattern, the Second Circuit has attempted to mold *Intel's* clay into a discernible shape:

> [T]he planned proceedings must be within *reasonable* contemplation. In other words, the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated. In this regard, our sister Circuits have stated that "a district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time" .... We need not decide here what precisely an applicant must show to establish such indications; it suffices to observe that the Supreme Court's inclusion of the word "reasonable" in the "within reasonable contemplation" formulation indicates that the proceedings cannot be merely speculative. At a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye.

*Certain Funds*, 798 F.3d at 123-24 (emphasis in original). In addition to providing some indication that an action is "being contemplated" and will commence "within a reasonable time," the action must have been within reasonable contemplation at the time the section 1782 application was filed with the district court. *Id*. at 24.

The Wirtgen letter presents a situation that has not been subject to extensive judicial review. Caterpillar supports its argument that it meets this statutory requisite by emphasizing that the only reason there are no extant legal proceedings in Germany is because Caterpillar voluntarily refrained from selling machinery that incorporated the patent technology at issue. Yet Caterpillar is unable to cite any authority holding that such a scenario constitutes a "legal proceeding" under section 1782. On the other hand, Respondents similarly fail to identify any court decision concluding definitively that the threat of litigation posed by retained counsel for the party opposing discovery cannot represent a reasonably contemplated proceeding. Most cases instead involve a situation wherein the party seeking section 1782 discovery is also the party

considering legal action. *See, e.g., Certain Funds*, 798 F.3d at 124 (holding that party's retention of counsel and discussing the possibility of initiating litigation did not constitute proceedings within reasonable contemplation); *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1271 (11th Cir. 2014) (affirming district court's determination that party's intent to commence action against former employees was within reasonable contemplation).

In light of the "broad range of discovery" authorized by section 1782, *Intel*, 542 U.S. at 259, it seems plausible that Respondents' indefinite threat of litigation in Germany could constitute a proceeding within reasonable contemplation. Significantly, Wirtgen GmbH had already initiated multiple actions against Caterpillar and its affiliates involving the same patent technology at issue at the time the letter was issued, which made the possibility of German litigation more likely at the time of Caterpillar's section 1782 application. *See In re Hornbeam Corp.*, 722 F. App'x 7, 9 (2d Cir. 2018) ("Hornbeam previously brought two related actions in the [British Virgin Islands] against Halliwel and represented that it intended to initiate further litigation once it obtained additional information. This provides a sufficiently 'concrete basis' for a 'contemplated [foreign] proceeding.'"). Such a scenario at least arguably pushes Wirtgen GmbH's threat beyond the realm of merely "speculative" litigation.

Additionally, the Wirtgen letter clearly states that legal action may be brought if Caterpillar advertised or sold the subject products anywhere in Germany "including but not limited to" the Bauma trade show. (DE 5-1 at 3). Caterpillar's decision to forgo exhibition of the machinery at this single trade show does not alter the fact that the possibility of litigation remained spring-loaded, ready to be triggered at the first instance of any commercial endeavor in Germany that Wirtgen GmbH deemed violative of its patents. There is also no "temporal

requirement" in section 1782, *In re Furstenberg Fin. SAS*, No. 16-MC-60266, 2016 WL 10707012, at *6 (S.D. Fla. July 27, 2016), *aff'd sub nom. Application of Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031 (11th Cir. 2017), which would seem to allow for finding that such a Damoclesian posture satisfies the third statutory element.

Nevertheless, the Court is unable to reach as far as concluding that a letter threatening another company with litigation only if it fails to cease its allegedly infringing behavior constitutes a proceeding within reasonable contemplation for purposes of section 1782. As Respondents note, the fact that the letter was effective in preventing Caterpillar from advertising or selling the machinery in question at the Bauma trade show or elsewhere in Germany demonstrates that no legal proceeding was reasonably being contemplated at the time Caterpillar filed its application. Any such contemplation is simply too attenuated to find otherwise. *Cf. Application of Consorcio*, 747 F.3d at 1271 (holding that applicant's "detailed explanation of its intent to pursue civil and possibly subsequent criminal proceedings" against former employees in Quito, Ecuador satisfied statutory threshold).

The lack of urgency also distinguishes the German Matter from cases in which courts have found that unfiled actions satisfied this first statutory threshold. *See, e.g. In re Kiobel*, No. 16 CIV. 7992 (AKH), 2017 WL 354183, at *3 (S.D.N.Y. Jan. 24, 2017), *rev'd on other grounds sub nom. Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238 (2d Cir. 2018) (finding that a Dutch proceeding was within reasonable contemplation when applicant's counsel drafted writ to initiate litigation and applied for and obtained legal aid). Should such

19

urgency ever arise and a more material action take form, Caterpillar may again pursue relief under section 1782.[12]

### D. The *Intel* Factors

Despite the finding as to the German Matter, Caterpillar has satisfied the only other statutory element in dispute, that is the "for use" requisite with respect to the Milan and Genoa Actions and Respondents concede that the statutory elements have been met as to the Turin Action. Because the section 1782 statutory requirements are met as to those actions, the Court continues its analysis. *See Chevron Corp. v. Berlinger*, 629 F.3d 297, 310-11 (2d Cir. 2011) (holding that district court's production order under section 1782 was adequately based on finding that separate civil and criminal proceedings in Ecuador were qualifying tribunals without needing to determine whether an international arbitral entity constituted a qualifying foreign proceeding). Having concluded that it has the authority to grant Caterpillar's application, the Court turns to the question of whether it should exercise its discretion to do so pursuant to the factors delineated in *Intel*.

---

[12] Despite this finding, the Court notes that nothing in section 1782 precludes Caterpillar from using the evidence it obtains in connection with the Italian Actions in a separate lawsuit against Respondents or a different party. *Glock v. Glock, Inc.*, 797 F.3d 1002, 1007 (11th Cir. 2015). *See also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) ("Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise."). For that reason and given the substantial overlap in the various proceedings and the patents at issue, the Court's finding as to the German Matter appears to have little practical impact on the outcome. Nevertheless, for clarity, and to the extent that discovery related to the German Matter can be distinctly severed, the denial of the motion to quash does not extend to the German Matter. In other words, if a practical possibility, the motion to quash is effectively granted as to the German Matter (described in the subpoenas as the "German Allegations").

**1. Whether the Party From Whom Discovery is Sought is a Party to the Foreign Proceeding.**

Regarding this initial factor, the Supreme Court has explained that "when the person from whom discovery is sought is a participant in the foreign proceeding … the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Because there is no dispute that the parties from whom Caterpillar seeks discovery, Wirtgen America and Deere, are not parties to any of the European proceedings, Respondents frame the first discretionary consideration as an inquiry into whether the information Caterpillar seeks via section 1782 discovery is "more readily" available from a litigant in the European proceedings. (DE 24 at 21.) Respondents argue that because Wirtgen GmbH is both a party to each of the Italian Actions and the primary source of information covering technical and sales materials relating to the patent technology at issue, Caterpillar's subpoena requests "are more properly addressed to Wirtgen GmbH." (*Id.*).

Respondents are correct that the first *Intel* factor is not as straightforward as simply determining whether the party targeted by a section 1782 application is an active litigant in the foreign proceedings. Some courts have noted that the "true question at hand is whether the requested discovery is available to the foreign tribunal without the assistance of this Court." *In re Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic*, 748 F. Supp. 2d 522, 526 (E.D. Va. 2010).

Even with this framework, however, the evidence is at best neutral. Caterpillar seeks, among other things, documents related to American prior art and Deere's purchase of Wirtgen Group, none of which is more likely to be in the possession of Wirtgen GmbH. Caterpillar also highlights Wirtgen America's previously stated position, articulated via briefing in the USITC action, which emphasized that Wirtgen America was not a subsidiary of Wirtgen GmbH and that

the two companies "share[d] only certain data." (DE 29 at 9, n.2.) This is a critical distinction between the instant matter and the lone case Respondents cite in support of their position, *In re IPC Do Nordeste, LTDA, For an Order Seeking Discovery Under 28 U.S.C. 1782*, in which the district court granted the subject respondent's motion to quash in part based on the applicant's own admission that all of the evidence it sought from the respondent was in the possession of a litigant to the foreign proceeding at issue. No. 12-50624, 2012 WL 4448886, at *5 (E.D. Mich. Sept. 25, 2012) ("[A]s it is uncontested that the Brazilian court has the power to order the production of the evidence sought by [the applicant], the first *Intel* factor weighs in favor of [the respondent] and against [the applicant]."). The Court therefore finds this factor weighs in favor of discovery.

### 2. Whether the Foreign Courts Will Be Receptive to Section 1782 Discovery.

Respondents next argue that the Italian courts will not be receptive to the documents sought by Caterpillar because the evidentiary period in two of the cases, the Milan and Genoa Actions, has closed. (DE 24 at 21.) Respondents also emphasize that the judge presiding over the Milan Action previously determined that documents related to the Wirtgen 2500 SM machine were not "sufficiently relevant to warrant admission and consideration." (*Id.*)

Respondents' position is not persuasive. The majority of opinions from other circuits indicate that the second *Intel* factor weighs against a section 1782 application only if there is "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa*, 51 F.3d at 1100. *See also Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (noting that the party opposing discovery "ha[s] not pointed to any judicial, executive or legislative declaration that clearly demonstrates that allowing discovery in this case would offend Ecuadorian judicial norms") (internal citation and quotations omitted).

22

District courts have also been "instructed to tread lightly and heed only clear statements by foreign tribunals that they would not welcome § 1782 assistance." *In re Porsche Automobil Holding SE*, No. CV 19-MC-91129-LTS, 2019 WL 5806913, at *7 (D. Mass. Nov. 6, 2019) (internal citation and quotations omitted). Respondents have cited no such proof in the instant matter.[13]

Moreover, as discussed *supra*, Respondents' argument relies heavily on the admissibility of the evidence at issue, which is not a proper inquiry for this Court. *See In re O'Keeffe*, 646 F. App'x 263, 267 (3d Cir. 2016) ("We have never required district courts to determine whether *particular* evidence would be admissible in a foreign court. Instead, *Intel* suggests the inquiry is more generally the receptivity to U.S. federal-court judicial assistance.") (internal citation and quotations omitted) (emphasis in original). It is true, as a general matter, that a district court "may" elect to bar discovery if the evidence sought is "only marginally relevant" and intended solely to harass the respondents. *In re Schlich*, 893 F.3d at 52. However, the Court finds nothing in the current record suggesting that the materials sought by Caterpillar are immaterial to the patent claims pending in the Italian Actions and sees no reason to further question its relevance to the foreign proceedings. That determination is more appropriately left to the Italian courts. *See In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in the Norway*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) ("[A] court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant

---

[13] Notably, the Supreme Court permitted discovery in *Intel* even though the foreign tribunal at issue, the European Commission, had filed an *amicus* brief in which it stated that it did not "need or want" the district court's assistance. 542 U.S. at 265-66.

evidence thereunder.") (quoting *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003)).

Because Respondents provide no definitive proof that the Italian courts will be unreceptive to evidence derived from a section 1782 application, and because there is no indication Caterpillar pursues the instant application in bad faith, the Court finds this factor also weighs in Caterpillar's favor.

### 3. Whether the Application Attempts to Circumvent Foreign Proof-Gathering Restrictions.

Respondents contend that Caterpillar's application represents an improper attempt to obtain broader discovery than it received in the USITC action. (DE 24 at 25.) Respondents also argue that the judge presiding over the Turin Action, which includes a discovery process that Respondents concede remains open at this juncture, would "unlikely" find Caterpillar has met its burden to obtain the discovery sought via the section 1782 application. (*Id.*)

Respondents' arguments echo its assertions regarding the first two *Intel* factors and for many of the same reasons previously discussed, the Court finds such arguments unavailing. Foremost of these is that Respondents continue to ask the Court to prohibit discovery based on prognostications of the Italian courts' rulings, which represents precisely the type of "speculative foray[] into legal territories unfamiliar to federal judges" that section 1782 does not support. *Euromepa*, 51 F.3d at 1099. Respondents emphasize the "limited discovery" available in Italian patent cases (DE 24 at 25), but a section 1782 applicant does not circumvent a foreign court's purview merely by seeking discovery that would not be available in that jurisdiction. *See Mees*, 793 F.3d at 303 (holding that because section 1782 contains no foreign-discoverability requirement, "the availability of the discovery in the foreign proceeding should not be afforded undue weight"). It is in fact well within a district court's authority to grant

"broader discovery under § 1782 than what might be permitted in the foreign tribunal." *In re Gorsoan Ltd.*, __ F. Supp. 3d. __, 2020 WL 409729, at *8 (S.D.N.Y. Jan. 24, 2020). Such policy makes logical sense given that each of the foreign courts at issue will continue to serve as gatekeeper as to any evidence derived from Caterpillar's subpoenas. *See In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 698 (3d Cir. 2018) (noting that despite granting a section 1782 application, "the German court retains the authority to disregard irrelevant or cumulative evidence, or even to conclude that it will not admit any of the submissions").

The Court reiterates that it sees no indication of bad faith on the part of Caterpillar, particularly given that the Turin Action was "in its initial phase" on the date the motion to quash was filed. (DE 24 at 14). The Court also declines to foreclose discovery based on Respondents' contention that "many" of the same claims at issue in the USITC proceeding are currently being litigated in the Italian Actions. (DE 24 at 25). Even assuming this is an accurate comparison, Caterpillar correctly notes that the preferred remedy for any overly broad section 1782 application is "trimming" the accompanying discovery requests and not denying the application outright. *JSC MCC EuroChem v. Chauhan*, No. 3:17-mc-0005, 2018 WL 3872197, at *5 (M.D. Tenn. Aug. 15, 2018).

Finally, it bears repeating that none of the Italians courts has issued a declaration that the discovery sought by Caterpillar would undermine existing procedural restrictions. This alone distinguishes it from scenarios in which district courts have found that the third *Intel* factor weighs against a section 1782 application. *Cf. In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1041 (N.D. Cal. 2016) (finding attempted circumvention by applicant where Korean tribunal explicitly stated in *amicus* brief that the subject section 1782 applications

25

"seek [ ] to improperly bypass Korean legal procedures for obtaining documents submitted to the [Korean tribunal] by third parties"); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006), *abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019) (finding that section 1782 application "constitute[d] a blatant end-run around" foreign evidence-gathering based on foreign tribunal's letter to district court indicating that subpoenas at issue were "not objectively necessary but rather an attempt to circumvent the established rules on access"). It would therefore be imprudent to assume that any information derived from Caterpillar's subpoenas would be unwelcome in the Italian Actions. For all these reasons, the Court finds this factor weighs in favor of discovery.

### 4. Whether the Discovery Sought is Unduly Intrusive or Burdensome to Respondents.

Respondents finally assert that Caterpillar's discovery requests are "unreasonably broad, duplicative of previous productions, and directed to marginally relevant subject-matter[.]" (DE 24 at 26). Respondents also argue that the requests would "likely" capture otherwise privileged documents and work product that its attorneys have generated over the course of litigation with Caterpillar and its affiliates. (*Id.* at 27). Finally, Deere contends that it is not an appropriate source for any of the documents sought in Caterpillar's subpoena given that it acquired Wirtgen Group only after the patents at issue were "fil[ed]." (*Id.*).

The Court's assessment of the fourth *Intel* factor is governed by the Federal Rules of Civil Procedure. "The scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules." Fed. R. Civ. P. 45, Advisory Committee Notes (1970). *See also Bäumer v. Schmidt*, *supra*. The Federal Rules of Civil Procedure permit broad discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). Discovery requests are considered "unduly intrusive and burdensome" if they "are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *Robert Bosch LLC*, 294 F. Supp. 3d at 739 (citing *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d at 1043). "[U]nduly intrusive or burdensome requests may be rejected or trimmed" by the district court. *Intel*, 542 U.S. at 265. *See also In re Application to Obtain Discovery for Use in Foreign Proceedings*, 393 F.3d 710, 730 (6th Cir. 2019) (district courts enjoy substantial discretion to shape discovery under section 1782(a)).

The Court first notes that the subpoenas at issue seek only production of documents and not testimony from any officers of Wirtgen America or Deere. (*See* DE 15-1). Respondents also make no meaningful argument that the discovery sought is not relevant, therefore the burden lies with Respondents to establish that the discovery requests are unduly burdensome. *Bluewater Music Services Corporation v. Spotify USA Inc.*, No. 3:17-cv-01051 et al., 2019 WL 6896613, at *1 (M.D. Tenn. Apr. 3, 2019) (citing *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 310 (W.D. Tenn. 2008)) (Frensley, M.J.).

Respondents cite the Western District of Washington's decision in *In re Degitechnic* to suggest that Caterpillar's requests are "extremely broadly-worded" and "sweeping." No. C07-414-JCC, 2007 WL 1367697, at *5 (W.D. Wash. May 8, 2007). Notably, however, the party opposing discovery in *Degitechnic* provided particularized cost and time estimates that the court deemed "plausible" and adequate to support the opposing party's claims that the section 1782 discovery at issue would cause undue burden. *Id*. Such specificity is not part of Respondents'

opposition to the discovery requests in this matter, which weighs in favor of permitting discovery. *See William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-cv-00807, 2017 WL 1326504, at *12 (S.D. Ohio Apr. 11, 2017), *aff'd sub nom. William Powell Co. v. OneBeacon Ins. Co.*, 2017 WL 3927525 (S.D. Ohio June 21, 2017) ("Without offering evidence explaining the nature of the alleged burden it faces in producing the proposed discovery, OneBeacon has not met its burden of showing that the burden or expense of complying with Powell's discovery requests … outweighs the likely benefit of such discovery[.]"); *see also Waters v. Drake*, 222 F.Supp.3d 582, 605 (S.D. Ohio 2016) ("Proportionality cannot be demonstrated using boilerplate language.")

To their credit, Respondents do take some steps to establish the potential overbreadth of Caterpillar's requests. For example, Respondents highlight the broad definition of Wirtgen America and Deere provided in each subpoena, which includes "agents, employees, contractors, affiliates, officers, directors, attorneys, investigators, and legal representatives" (DE 15-1 at 6), which they claim would improperly require counsel for Respondents to search for documents and would lead to the production of privileged documents. (DE 24 at 26-27). The Court agrees that the inclusion of "attorneys" in this definition would generally make it "highly likely" that the requests seek information protected by privilege or the work product doctrine. *Robert Bosch*, 294 F. Supp. 3d at 740. Yet the same page of the subpoena makes clear that any "documents" requested include only "non-privileged documents." (DE 15-1 at 6). The Court is confident that Respondents' attorneys are sufficiently experienced in complex intellectual property litigation and with the discovery rules in federal court generally to shield Respondents from disclosure of documents otherwise protected by privilege or the work product doctrine.[14]

---

[14] Respondents' argument also appears incongruent with its separate complaint that the subpoena is unduly burdensome because it requires preparation of a privilege log. (DE 24 at 26). This latter contention is entirely without merit given that the Federal Rules of Civil Procedure

Respondents also note that the first seven requests, which correspond to the seven European patents at issue, do not include any time limitation. (DE 24 at 27.) And Respondents further complain that the phrasing "all documents," which is used in the first seven requests and two others, is "vague" and improper in light of the history of litigation between Wirtgen and Caterpillar affiliates. (*Id.*). Respondents submit that, for these reasons, Caterpillar's subpoena "should be rejected in its entirety." (*Id.*).

While Respondents' position is not without merit, it oversteps. Respondents' all-or-nothing approach to the subpoenas leaves no room for any overly broad requests to be "trimmed" into reasonable discovery probes. *Intel*, 542 U.S. at 265. While the Court generally agrees that the subpoenas seek broad categories of information, Respondents have not proffered an alternative version of more narrowly-tailored discovery requests, moved for a protective order, or cited any cases in which requests similar to those propounded here were rejected outright by a court.

Finally, Respondent Deere asserts that it should not be subject to section 1782 discovery since it only acquired Wirtgen Group after the patents at issue were filed, and states that it has "no operational information on Wirtgen Group dating prior to its acquisition" of Wirtgen America. (DE 24 at 27). Deere also cites *In re Vivendi Universal, S.A. Sec. Litig.,* No. 02 CIV. 5571 RJH HBP, 2009 WL 8588405 (S.D.N.Y. July 10, 2009) to argue that, as a parent company separate from Wirtgen America's management and distribution networks, it is not the proper entity to address the information sought in Caterpillar's subpoena.

---

require that any party withholding documents pursuant to privilege or work-product prepare a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A); *see also Polaris Indus., Inc. v. CFMOTO Powersports, Inc.*, No. CV 10-4362 (JNE/JJG), 2012 WL 13028232, at *7 (D. Minn. Jan. 12, 2012) (requiring party objecting to interrogatory that sought information protected by attorney-client privilege and work-product doctrine to produce a privilege log pursuant to Fed. R. Civ. P. 26(b)(5)).

Generally, Rule 34 requires production of those documents "in the responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a)(1). Although it may well be the case that Deere is not the proper target of Caterpillar's quest for discovery, Respondents have failed to make a compelling argument in support of this position. Aside from the fact that *Vivendi Universal* did not involve a section 1782 application, the case holds that a party cannot rely exclusively on the parent company/subsidiary relationship to establish that the parent company has access to documents that are actually in possession of the foreign subsidiary. 2009 WL 8588405, at *3. Caterpillar has not attempted such a backchannel, but instead issued subpoenas to both the parent company and the subsidiary in this case, ostensibly to procure information that is not necessarily in the exclusive possession of either entity. If Deere is not in possession of materials sought in a particular request for production, it may state as much in its response.

Similarly, Deere's contention that it "should not be required to again search for and produce documents for a recently acquired and separate corporate entity" (DE 24 at 27) does nothing to demonstrate that the discovery requests will subject Deere to undue hardship. *See Biomet Orthopaedics*, 742 F. App'x at 699-700 (noting that party opposing section 1782 discovery "did not proffer any empirical evidence that [the applicant's] request would be too burdensome"). At most, this final *Intel* factor is neutral, which is insufficient to overcome the remaining discretionary factors that weigh in favor of discovery. For all these reasons, the Court will deny Respondents' motion to quash.

The Court pauses to address Respondents' separately filed responses to Caterpillar's subpoenas, which were filed in addition to the motion to quash. (*See* DE 27, 28). Each filing contains over 60 pages of general and specific objections to Caterpillar's requests, which the Court declines to address at this juncture. While this is the kind of discovery dispute that *Intel*

and subsequent cases have left to the discretion of the district court, this Court expects parties to make good faith, concerted attempts to resolve such disputes before seeking the Court's intervention.

Based on the foregoing, the Court will give both Deere and Wirtgen America an additional thirty (30) days to provide responses to Caterpillar's subpoenas in light of the instant order, except as to the German Allegations as that term is defined in the subpoenas. Respondents are of course permitted to lodge any relevant objections to the discovery requests as part of their responses, which can then be brought to the Court's attention in accordance with the Court's ordinary discovery dispute resolution procedures as follows.

First, lead counsel for all parties must conduct an in-person meeting and make a good faith effort to resolve any dispute(s). Any remaining unresolvable disputes may then be brought to the attention of the Magistrate Judge by a request for a discovery conference. It will be within the discretion of the Magistrate Judge whether to allow further filing of discovery-related motions, after counsel have scheduled and participated in a discovery conference. In connection with any discovery conference, the parties must file a joint discovery dispute statement, of no more than 3 pages per affected party per issue, which identifies and describes the specific discovery request(s) in dispute and details each party's position with supporting facts and legal authorities, including as to any proportionality considerations. The joint discovery dispute statement shall certify that lead counsel held the required in-person meeting and made a good faith effort to resolve each discovery dispute presented in the statement. No discovery conference will be held until a compliant joint statement is filed.

The parties are reminded that the Court takes a dim view of parties asserting intractable positions in discovery disputes. While the Court prefers not to resolve discovery disputes by

rewriting discovery requests (in this case subpoena requests) that use outdated, overly broad, everything-and-the-kitchen-sink language, if left no choice, the Court will do so, but Caterpillar may not like the outcome. *See* Fed. R. Civ. P. 26(b) and 34(b). Similarly, if Respondents rely on outdated, boiler-plate objections that do not inform the Court's determination of discoverability, including as to proportionality, they may not like the outcome. *Id.* With the guidance discussed above, the parties would be well served to resolve, or at least substantially narrow and refine, any remaining disputes as to the substance of the subpoenaed information.

### III.    CONCLUSION

For the foregoing reasons, Respondents' motion to quash (DE 23) is DENIED and Caterpillar's application for discovery pursuant to 28 U.S.C. § 1782 is GRANTED to the extent provided herein. Respondents Deere and Wirtgen America are ordered to produce within thirty (30) days of the date of entry of this Memorandum Opinion and Order the documents requested in the issued subpoenas (*see* DE 15-1, DE 15-2), except as to the German Allegations (as that term is defined in the subpoenas) and subject to any objections lodged in accordance with applicable Federal Rules of Civil Procedure and the Court's Local Rules, which shall be resolved in accordance with the discovery dispute resolution procedures detailed above.

It is SO ORDERED.

BARBARA D. HOLMES
United States Magistrate Judge